# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6023
_____

| | | |
|---|---|---|
| In re: Lewis and Clark Apartments, LP | * | |
| | * | |
| Debtor | * | |
| | * | |
| U.S. Bank National Association | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Creditor-Appellant | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Lewis and Clark Apartments, LP | * | |
| | * | |
| Debtor-Appellee | * | |

_____

Submitted: September 12, 2012
Filed: October 11, 2012
_____

Before KRESSEL, Chief Judge, FEDERMAN AND NAIL, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

U.S. Bank National Association ("U.S. Bank") appeals from an Order granting the motion of Debtor Lewis and Clark Apartments, LP to value U.S. Bank's allowed secured claim pursuant to § 506(a) of the Bankruptcy Code, and valuing the claim at $3,500,000. There are two issues before us. The first is whether the valuation Order by itself can be the subject of this appeal. We hold that the Order is not final but that

U.S. Bank's alternative request[1] to grant leave to appeal it as an interlocutory order should be granted. The second issue is whether the Bankruptcy Court erred in its valuation by not attributing any value to the low income tax credits that the owner of the property is eligible to claim. For the reasons that follow, we conclude that such credits, as well as the obligations they impose, do affect the value of the property and should have been considered as part of the property's value. Therefore, we REVERSE AND REMAND.

## FACTUAL BACKGROUND

The Debtor owns an apartment complex. It is structured as a limited partnership consisting of (i) a General Partner - Lewis and Clark Partners, LLC - that owns a 0.01% interest, (ii) a Special Class B Limited Partner - Lewis and Clark State LIHTC Fund, LLC ("State LIHTC Fund") - that owns a 0.01 % interest, (iii) an Investor Limited Partner - Centerline LP - that owns a 99.97% interest, and (iv) a Special Limited Partner - Centerline LLC - that owns a 0.01% interest.

The apartment complex is a Low Income Housing Tax Credit (LIHTC) property. LIHTC programs provide parties with an incentive to invest in affordable housing for low-income families by awarding state and federal tax credits to owners of property, provided those owners agree to certain rent and occupancy restrictions on their multi-family properties. The tax credits are available to the owners for a ten-year period, but the rent and occupancy restrictions remain with the land for a longer period of time. In this case, the restrictions are evidenced by a Low Income Tax Credit Land Use Restriction Agreement, dated June 11, 2009 and recorded June 17, 2009. The parties agreed at oral argument that, with certain conditions including the compliance with the rent and occupancy restrictions, the tax credits are available to a subsequent owner of the property, regardless of whether the new owner acquires

---

[1] *Notice of Appeal* at n.1.

through a foreclosure or a sale. The amount of the state tax credits that may be claimed by the owner of the Debtor's apartment complex each year through 2018 is approximately $277,649, and the amount of the federal tax credits that may be claimed by the owner in those years is likewise approximately $277,649. The Debtor's partnership agreement specifies how these tax credits are to be allocated among the partners. Since eligibility for the tax credits runs with the land, those partners are only eligible to claim those tax credits so long as they retain an ownership interest in the entity that owns the property.

U.S. Bank filed a proof of claim in Debtor's bankruptcy case asserting a secured claim against Debtor in the total amount of $6,297,215.39. There is no dispute that that claim is secured by a first priority Deed of Trust on the apartment complex. U.S. Bank also claims a security interest in other collateral including, but not limited to, the tax credits. BankLiberty claims a security interest in the portion of the tax credits allocated by the partnership agreement to State LIHTC Fund, the Special Class B Limited Partner, as security for a loan made by that bank's predecessor to someone other than the Debtor.

## STANDARD OF REVIEW

A determination of value pursuant to § 506(a) of the Bankruptcy Code presents a mixed question of fact and law.[2] The bankruptcy court's findings of facts are reviewed under the clearly erroneous standard, while its legal conclusions are reviewed *de novo*.[3]

---

[2] *In re Creekside Senior Apartments, LP*, ___ B.R. ____, 2012 WL 2479549 at *13 (B.A.P. 6th Cir. June 29, 2012).

[3] *Addison v. Seaver* (*In re Addison*), 540 F.3d 805, 809 (8th Cir. 2008).

## LEGAL ANALYSIS

### *1. Is the Order Appealable?*

We have jurisdiction to hear appeals from final orders and from interlocutory orders with leave of the court.[4]  As stated, this appeal is from an Order granting the Debtor's motion to value U.S. Bank's claim and determining the value of the property.  Generally speaking, an order valuing collateral, standing alone, is not a final order inasmuch as it does not give either party the right to do anything as against the other.[5]  At the time the Debtor filed its motion for valuation, however, there were two pending matters which were dependent on the value of the property.  One was a motion for relief from the stay or, in the alternative for adequate protection, which was filed by U.S. Bank.  The other was the Debtor's Second Amended Plan of Reorganization.

On March 6, 2012, the Court held a hearing on the motion for relief from stay and on valuation.  At that hearing, the Debtor offered no evidence on valuation, but did offer evidence on the elements necessary to confirm a plan, recognizing that the confirmation hearing was to be held two weeks later.  Debtor's counsel represented that the Debtor valued the property – without consideration of any value attributable to the tax credits – at $3.4 to $3.5 million.  U.S. Bank appraised it at $3.27 million, with an additional $2,040,000 for the tax credits, for a total of $5,310,000.  On March 12, 2012, the Court entered its Order denying the motion for relief from the stay and,

---

[4] *In re Coleman Enters., Inc.*, 275 B.R. 533, 537 (B.A.P. 8th Cir. 2002); 28 U.S.C. §§ 158(a)(1), (a)(3), (b).

[5] *Gaines v. Nelson* (*In re Gaines*), 932 F.2d 729, 731 (8th Cir. 1991) (finality requires, *inter alia,* that the Order leave nothing for the bankruptcy court to do but execute on it).

as applicable here, valuing the property. This appeal does not involve the portion of the Order dealing with the automatic stay.

Subsequently, on March 20, 2012, the Bankruptcy Court held the confirmation hearing. As of now, the Bankruptcy Court has not entered an order on confirmation of the Second Amended Plan.

If the motion to value were being appealed as part of an appeal of one of those other pending matters, it might be considered final for purposes of appeal.[6] However, the motion itself was silent as to its purpose, and there is nothing in the record stating what the purpose of valuation was. The Debtor asserts that it filed the motion for valuation in connection with the motion for stay relief, since one element of proof under § 362(d) is that there is no equity in the property. However, the Debtor conceded, and the Bank's appraisal evidence showed, that there was no equity in the property even if the tax credits were included in the value. Therefore, contrary to the Debtor's assertion, no further valuation was necessary for purposes of stay relief. U.S. Bank contends that valuation was necessary in order for the Debtor to confirm its plan, which requires the Debtor to prove that the plan pays secured creditors the present value of their collateral.[7] As stated, the Bankruptcy Court has not ruled on confirmation.

As a result, since the determination of value was not needed for the stay relief motion, and since the Court has not ruled on confirmation, the determination as to value is not a final order.

---

[6] *See, e.g.*, *Zahn v. Fink* (*In re Zahn*), 526 F.3d 1140, 1143 (8th Cir. 2005) (holding that earlier rulings can be reviewed as part of appeal from confirmation order).

[7] 11 U.S.C. § 1129(b)(2).

In deciding whether to grant a motion for leave to appeal an interlocutory order, the Eighth Circuit typically applies the standards found in 28 U.S.C. 1292, which define the jurisdiction of courts of appeal to review interlocutory orders. Section 1292(b) requires that: (1) the question involved be one of law; (2) the question be controlling; (3) there exists a substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) a finding that an immediate appeal would materially advance the ultimate determination of the litigation.[8]  Leave to grant review of interlocutory appeals should be sparingly granted, and then only in exceptional cases.[9]  We hold that, in the unusual circumstances presented to us here,  such leave should be granted.  That is so because regardless of whether the pending plan is confirmed, or a modified one is proposed, a determination of the value of U.S. Bank's collateral is critical to the manner in which its claim will be treated in any such plan.  This appeal presents a novel issue of law in this Circuit, namely whether the tax credits and attendant use restrictions attributable to the Bank's collateral should be considered in valuing such collateral. Determination of that issue will control U.S. Bank's rights in any plan which may be confirmed.  Unlike a typical appeal involving valuation, where the issue involves a finding of fact as to which party's evidence is more credible, the issue here is whether the Court applied the correct legal standard in determining that the availability of tax credits should not be considered.

In addition, as will be seen, there is a substantial ground for difference of opinion with the Bankruptcy Court's legal determination; indeed, we hold that its ruling as to value was based on an erroneous legal conclusion.  Since any plan confirmation will be dependent on valuation, resolution of the question presented would materially advance a final determination on confirmation.  For these reasons, we grant U.S. Bank's alternative request for leave to appeal the interlocutory order.

---

[8] *In re Machinery, Inc.* 275 B.R. 303, 306 (B.A.P. 8th Cir. 2002)

[9] *Id.* (citation omitted).

## 2. Did the Court Err by Failing to Consider the Tax Credits and Restrictions in Valuing U.S. Bank's Collateral?

Section 506(a)(1) of the Bankruptcy Code provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.[10]

Valuation under § 506(a)(1) first requires the court to "compare the creditor's claim to the value of such property, *i.e.,*, the collateral."[11] This determination requires the court to ascertain the "creditor's interest in the estate's interest in" the property.[12] The second step requires the court to determine how to value the collateral.[13] When, as here, the debtor proposes to retain property and continue to use it in the debtor's trade or business, "the proper methodology to use in establishing 'the amount of the

---

[10] 11 U.S.C. § 506(a)(1).

[11] *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961, 117 S.Ct. 1879, 1884-85, 138 L.Ed.2d 148 (1997) (internal quotation marks omitted).

[12] 11 U.S.C. § 506(a)(1). *See also In re Creekside Senior Apartments*, 2012 WL 2479549 at *11.

[13] *Creekside*, 2012 WL 2479549 at *11 (citing *Rash*, 520 U.S. at 961-62, 117 S.Ct. 1879).

secured claim under § 506(a) . . . is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller.'"[14]

As noted, U.S. Bank claims a direct security interest in the tax credits themselves, which is disputed by the Debtor. In addition, BankLiberty claims a security interest in the portion of the credits which, under the partnership agreement, have been allocated to State LIHTC Fund, for a separate loan as to which the Debtor is not obligated. These claims presume that the tax credits are an asset which can be owned separate and apart from ownership of the apartment complex itself. Instead, those tax credits – like a low property tax rate or good schools – are a benefit which accrues only to those who have an ownership interest in the apartment complex itself.[15] For that reason, we hold that those credits and the accompanying restrictions have an effect on the amount that a willing buyer would pay to purchase the real estate: *i.e.,*, its value.

In *Creekside Apartments*, the Bankruptcy Appellate Panel for the Sixth Circuit recently considered the precise issue presented here: whether, as a matter of law, valuation of LIHTC property must include the value of remaining tax benefits available to the owners of such property. As here, the debtors in *Creekside Apartments* argued that the right to the tax credits was a separate asset held by the partnership that owned the debtor, and should therefore not be included in the property's value for plan confirmation purposes. But, as the Court there pointed out, "[t]he [investor] limited partners may have become entitled to the allocation of the Tax Credits through the respective partnership agreements, but they did not become

---

[14] *Id.* (*quoting Rash*, 520 U.S. at 960, 117 S.Ct. 1879).

[15] *See* 26 U.S.C. § 42(b)(1) and (d)(7)(A)(ii); *In re Creekside*, 2012 WL 2479549 at *16 ("Even when an entity allocates the rights to use the low-income housing tax credits to investors, it does not lose ownership of the tax credits. The tax credits remain with the property and with the owner of the property.").

the owners of the Tax Credits through those agreements."[16]  Instead, the Court held, those tax credits were owned by the debtors, and were covenants that ran with the real property.  Therefore, such credits would become available to subsequent owners of the property, whether due to sale or foreclosure, assuming the subsequent owners remained in compliance with applicable requirements.  In any event, upon transfer of ownership, the existing partnership and its members  would no longer be entitled to claim the credits.

While the tax credits are only available to those who own the property, either directly or via an interest in an entity which itself owns the property, the Bankruptcy Court concluded that the availability of those credits should not be considered in determining what a willing buyer would pay for such property.  The problem with that conclusion is that a valuation of income-producing property typically relies at least in part on the income capitalization approach, as did U.S. Bank's appraisal here.  Of course, the income capitalization approach produces a result which is directly related to the rents charged on the property.  LIHTC property, by its very nature, is property as to which the owners agree to a cap on the rents to be charged tenants.  Therefore, to the extent that that cap is below the market rate that could otherwise be charged, the value produced by the income capitalization approach would be expected to be artificially reduced.  The reason that the owners agree to those caps is that in exchange they, by virtue of their status as owners, become entitled to the tax credits, which in turn reduce the taxes the owners owe on other income.  In the same way that the caps and other restrictions on use of the property may affect its value negatively, the tax credits available to the owners as a result affect its value positively.  For that reason, valuation without consideration of the tax credits does not accurately reflect what a willing buyer would pay to purchase the property from the Debtor.  While the partners of the Debtor have decided in their partnership agreement how to allocate

---

[16]  *In re Creekside*, 2012 WL 2479549 at *16 (brackets in original, quoting the bankruptcy court's order).

use of the tax credits among themselves, they cannot choose to transfer the right to those credits to someone who does not have a direct or indirect ownership interest in the apartment complex.

The Debtor relies heavily on footnote 6 in *In re Rash*,[17] which concerned valuation of a vehicle. The Supreme Court held that where a debtor chooses to retain a vehicle, the secured claim should be the cost that the debtor would incur to obtain a like asset for the same proposed use. In footnote 6, the Court stated in part that "[a] creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning."[18] Thus, if the debtor went to a car lot to buy that vehicle, it might as part of the price get a short-term warranty which it does not get if it simply retains its own vehicle, so the value of the warranty should not be included. But here, the owners of the Debtor will, by retaining the property, continue to get the benefits of the tax credits which are available to them only because of their status as owners. Debtor also relies on the last sentence of the footnote, which states that "Nor should the creditor gain from modifications to the property – *e.g.*, the addition of accessories to a vehicle – to which a creditor's lien would not extend under state law."[19] Thus, if a bank has a lien on the vehicle and the debtor installs a stereo system to which the lien does not attach, the secured claim does not include the amount by which that system enhances the vehicle's value. Again, this argument tries to make an artificial distinction between ownership of the real property and ownership of the tax credits. Regardless whether U.S. Bank has or even could claim a lien on the tax credits themselves, the value of U.S. Bank's Deed

---

[17] 520 U.S. at 965, n.6, 117 S.Ct. at 1886 n. 6.

[18] *Id.*

[19] *Id.*

of Trust on the apartment complex is affected both by the existence of the restrictions on rents and the value of the tax credits available to whomever owns such complex.

The Bankruptcy Court held first that the tax credits should not be considered in valuing the property on which U.S. Bank holds a lien. For the reasons stated, we hold that that conclusion was erroneous as a matter of law.

In the alternative, the Bankruptcy Court rejected in its entirety the testimony of U.S. Bank's expert as to the value of those tax credits. While we find no clear error in the Bankruptcy Court's decision to do so, that testimony was the only evidence offered to establish the effect of the tax credits on the value of the apartment complex. Consequently, the Bankruptcy Court was left with no basis for determining the amount a willing buyer, giving due consideration to the availability of the tax credits, would pay for the apartment complex.

In order to confirm a plan, the Debtor must offer evidence as to all elements needed for confirmation, including that it proposes to pay U.S. Bank the present value of its secured claim.[20] To the extent the Debtor's motion for valuation was intended to establish a value for those purposes, the Debtor failed to offer sufficient evidence to allow the Bankruptcy Court to establish that value. On remand, the Bankruptcy Court should afford the parties the opportunity to offer additional valuation evidence before ruling on confirmation of the Debtor's plan.

The decision of the Bankruptcy Court granting the Debtor's motion for valuation and valuing U.S. Bank's secured claim at $3.5 million is REVERSED AND REMANDED.

---

[20] 11 U.S.C. § 1129.